IN THE MATTER OF BENNETT

Docket No. 58220. Argued October 4, 1977 (Calendar No. 5).—Decided July 24, 1978.

The Judicial Tenure Commission found Earl Warren Bennett, Third Judicial District Judge, First Division, City of Coldwater, guilty of judicial misconduct and recommended that he be removed from judicial office. The respondent appeals and has consented to an order providing for a reprimand or suspension from office for up to 30 days. *Held:*

1. The Constitution authorizes the Supreme Court to discipline judges for misconduct in office and conduct that is clearly prejudicial to the administration of justice. The record clearly shows that the respondent has been guilty of such conduct. The issue is whether that conduct warrants discipline and, if so, whether removal or some other form of discipline should be imposed.

2. The respondent knowingly and willfully violated an order of superintending control that visiting judges were to make determinations of indigency and appointments of counsel in criminal cases in the district court. This conduct is clearly prejudicial to the administration of justice. A judge is bound to show respect for the law. The respondent set a poor example for the community at large, suggesting by this behavior that he was above the law instead of subject to it. Such conduct necessarily hinders the administration of justice.

3. There is ample evidence that the respondent regularly

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judges § 85.

[2, 3, 4] 46 Am Jur 2d, Judges § 50.
75 Am Jur 2d, Trial §§ 91–119.

[2, 3] Remarks or acts of trial judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal. 62 ALR2d 166.
Prejudicial effect of remarks of trial judge criticizing counsel in civil case. 94 ALR2d 826.

[5] 75 Am Jur 2d, Trial §§ 87–123.

[6] 46 Am Jur 2d, Judges §§ 18, 19, 50.

[7] 46 Am Jur 2d, Judges §§ 86, 166.
75 Am Jur 2d, Trial § 87.

employed a variety of common obscenities and profane expressions in dealing with various persons on the bench and while conducting court business. While the use of off-color language by a judge in the privacy of his office or among close acquaintances would not necessarily amount to conduct supporting discipline, the record in the instant case shows that the respondent, on several occasions, used such language in an entirely injudicious manner that can only have been expected to offend, berate, or intimidate the persons to whom it was addressed. This necessarily demeaned the office the respondent holds and the judiciary in general. He was abusive of court employees, attorneys and others; he publicly made disparaging remarks about certain attorneys in particular and the system of justice in general. The highest standards of personal and professional conduct are demanded of judges of this state. The respondent's public use of profane, obscene and abusive language and abusive manner demonstrates a gross lack of judicial temperament and a violation of the judicial canons constituting conduct that is clearly prejudicial to the administration of justice.

4. The respondent, while he was a probate judge, improperly participated in the partisan political campaign of a candidate seeking election to the state House of Representatives and engaged in "mudslinging". This conduct could only result in diminished public confidence in the independence and impartiality of the judiciary and constitutes conduct clearly prejudicial to the administration of justice.

5. The respondent unilaterally and summarily terminated a contract with a law firm providing public defender services to indigent criminal defendants. He later explained that his decision was based upon information that the public defenders had been appointed in a particular case and had apparently collected a fee in connection with the same case. The respondent's conduct was clearly prejudicial to the administration of justice in at least two respects. First, respondent interfered with the attorney-client relationship in pending cases in which substitute appointments were made. Indigent defendants were thereby cut off from their counsel without request or explanation and their cases would necessarily have been disrupted. Second, respondent's action, even if the reason given by him for taking it is accepted, is further evidence of a lack of judicial temperament because he took the action without seeking any additional facts or explanation. It gave the appearance not of a judicious reasoned decision, but rather of an arbitrary exercise of judicial power.

6. Finally, respondent abused his judicial powers by entering

the County Register of Deeds office after hours and without authorization, through exertion of his authority as a judge. This activity resulted in respondent being admonished in the minutes of the county commission. Even respondent admitted the incident was unfortunate because it became a matter of some notoriety. The incident must have, in the eyes of many, clouded the image of the system of justice as able to dispense justice fairly and evenly to all. The Court has previously found similar arbitrary abuse of the judicial powers to amount to conduct supporting discipline.

7. The record establishes that the respondent has engaged in numerous incidents of conduct warranting discipline. His behavior has demonstrated a pattern of conduct showing insensitivity to the requirements of propriety in judicial conduct that constitutes judicial misconduct. A judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the system of justice as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench. The respondent's conduct has fallen short of this goal. These instances of misconduct must have displayed to the public an image of prejudice, disrespect for lawful authority, and lack of patience that can only have eroded public confidence in the judicial system and the office of judge.

Whether a suspension from office of any duration will have the desired corrective influence cannot be predicted with certainty. But the Court believes that the judicial misconduct of which the respondent is guilty, while demonstrably serious, does not warrant removal from office, and that an appropriate period of suspension may well have the desired corrective influence upon the respondent's judicial temperament.

The respondent is suspended from judicial office for a period of one year without pay. The order of suspension shall apply regardless of his election to another judicial office. Final process to effectuate the order of suspension shall issue immediately upon release of the opinion.

1. JUDGES—MISCONDUCT—SUPERINTENDING CONTROL—CONTEMPT.

A judge is bound to show respect for the law; a knowing and willful violation by a district judge of an order of superintending control from the circuit court that visiting judges were to make determinations of indigency and appointments of counsel for indigent defendants in criminal cases in the district court is clearly conduct prejudicial to the administration of justice (Code of Judicial Conduct, Canon 2).

2. JUDGES—MISCONDUCT—INJUDICIOUS LANGUAGE—JUDICIAL TEMPER-
   AMENT.

   Occasional use of off-color language by a judge in the privacy of
   his office or among close acquaintances would not necessarily
   amount to conduct supporting discipline; however, public use of
   profane, obscene, and abusive language on the bench and while
   conducting court business in an entirely injudicious manner
   that can only have been expected to offend, berate, or intimi-
   date the persons to whom it was addressed demonstrates a
   gross lack of judicial temperament and a violation of judicial
   canons (Code of Judicial Conduct, Canons 1, 2, 3).

3. JUDGES—MISCONDUCT—INJUDICIOUS LANGUAGE—JUDICIAL TEMPER-
   AMENT.

   The judicial canons demand the highest standards of personal
   and professional conduct; public use by a judge of obscene and
   profane language on the bench and in conducting court busi-
   ness, and public disparagement of certain attorneys, county
   commissioners, and the judicial system itself necessarily de-
   means the judge's office and the judiciary in general and preju-
   dices the impartiality and effectiveness of the administration of
   justice (Code of Judicial Conduct, Canons 1, 2, 3).

4. JUDGES—MISCONDUCT—PARTISAN POLITICS.

   A judge who actively and improperly participated in the partisan
   political campaign of a candidate seeking election to the state
   House of Representatives and engaged in public "mudslinging"
   is guilty of misconduct; his actions could only result in dimin-
   ished public confidence in the independence and impartiality of
   the judiciary and constitutes conduct clearly prejudicial to the
   administration of justice (Canons of Judicial Ethics, Canon 28).

5. JUDGES—MISCONDUCT—CRIMINAL LAW—ATTORNEY AND CLIENT—
   APPOINTMENT OF COUNSEL.

   A district judge was guilty of misconduct where he unilaterally
   and summarily terminated the contract with the law firm
   providing public defender services to indigent criminal defend-
   ants in both district and circuit courts upon being told of a
   possibly improper payment to the firm; this conduct was clearly
   prejudicial to the administration of justice because it interfered
   with the attorney-client relationship in pending cases in which
   substitute appointments of counsel were made without request
   or explanation to the defendants and it gave the appearance
   not of a judicious reasoned decision, but rather of an arbitrary

exercise of judicial power (Code of Judicial Conduct, Canons 1, 2, 3).

6. JUDGES—MISCONDUCT—ABUSE OF POWER.

A judge who abused his judicial powers by entering the office of the county Register of Deeds after hours and without authorization, through exertion of his authority as a judge, is guilty of judicial misconduct (Code of Judicial Conduct, Canon 2).

7. JUDGES—MISCONDUCT—IMPARTIALITY.

A judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the system of justice as an independent, impartial source of reasoned actions and decisions; public display of an image of prejudice, disrespect for lawful authority, and lack of patience by a judge can only erode public confidence in the judicial system and the office of judge (Code of Judicial Conduct, Canon 2).

*Joseph F. Regnier,* Executive Director and General Counsel, and *Neal W. Bauer,* Co-Examiner, for the Judicial Tenure Commission.

*Richard R. Lamb* for respondent.

RYAN, J. The Judicial Tenure Commission (hereinafter the Commission) has recommended, pursuant to its constitutional authority,[1] that this Court remove Judge Earl Warren Bennett from office.

Judge Bennett, the respondent, now serving as district judge for the Third Judicial District, 1st Division (Branch County), was elected to that office for the term commencing January 1, 1975. Prior to his election to the office of district judge, Judge Bennett was a probate judge for Branch County and served in that office from October 2, 1972 until December 31, 1974.

On March 15, 1976, the Commission filed Formal Complaint No. 16 against the respondent, following the notification of charges required by GCR

---

[1] Const 1963, art 6, § 30(2).

1963, 932.7(b). Judge Bennett filed a response to the charges.

On April 7, 1976 this Court appointed the Honorable William Ager as Master to conduct a hearing on the charges. On April 21, 1976 we denied a petition filed by the Commission seeking an interim suspension. The Master's hearing on the complaint was held on June 1 through June 4, June 16, July 14, and October 6, 1976.

The Master filed his report on February 2, 1977; it contains findings of fact and the conclusion that only a part of the conduct which was established at the hearing and charged in the complaint constituted misconduct in office or conduct prejudicial to the administration of justice.

Both the Commission examiner and Judge Bennett filed objections to the report of the Master and, following oral argument before it, the Commission issued its opinion and recommendation on April 12, 1977.

A five-member majority of the Commission found that misconduct sufficient to warrant Judge Bennett's removal from office had been established. Three commissioners dissented in part, disagreeing both as to the appropriateness of removal as the proper discipline and with the majority's characterization of Judge Bennett's behavior regarding one particular matter, discussed *infra,* as constituting misconduct clearly prejudicial to the administration of justice. The minority would suspend Judge Bennett from judicial office for a period of four months without pay.

Pursuant to GCR 1963, 932.24, the respondent has petitioned this Court to modify or reject the recommendation of the Commission claiming that:

1. The entire record does not establish that his behavior has demonstrated "a pattern of hostile

conduct unbecoming a member of the judiciary" and "insensitivity to the requirements of propriety in judicial conduct".[2]

2. The instances of misconduct established in these proceedings do not warrant his removal from office.

We have reviewed the entire record *de novo*[3] and conclude that the conduct charged to Judge Bennett and found by the Commission is established by the record. The issues for our consideration, then, are whether that conduct is of a nature warranting discipline and, if so, whether removal, as recommended by the Commission majority, or some other form of discipline should be imposed.

We agree with the Commission's finding that Judge Bennett has engaged in a course of conduct so seriously unbecoming a member of the judiciary that disciplinary action by this Court is necessary. We disagree with the Commission majority's assessment, however, that Judge Bennett's removal from office is warranted. Accordingly, we order that he be suspended from judicial office for a period of one year without pay.

## I

Formal Complaint No. 16 charged 11 types of conduct as warranting discipline of Judge Bennett. During the hearing before the Master, two of those charges were amended and a twelfth incident of conduct was added.

Summarized below are the charges warranting discipline which we find to be established in the record. Description of those paragraphs and por-

---

[2] Opinion and Recommendation of Judicial Tenure Commission.

[3] *In the Matter of Del Rio,* 400 Mich 665; 256 NW2d 727 (1977); *In the Matter of Mikesell,* 396 Mich 517; 243 NW2d 86 (1976); *In re Somers,* 384 Mich 320; 182 NW2d 341 (1971).

tions of paragraphs of Formal Complaint No. 16 are omitted which, regardless of whether they are established, we do not find to constitute misconduct in office or conduct prejudicial to the administration of justice.

*Paragraph 3 (as amended).*

That respondent participated in the campaign of a candidate seeking election to the state House of Representatives and engaged in conduct prejudicial to an opponent of that candidate, violating Canon 28 of the Canons of Judicial Ethics.

*Paragraph 4.*

That respondent, on the strength of his judicial office, gained entry to the Register of Deeds office, after hours and without other authorization, violating Canon 2 of the Code of Judicial Conduct.

*Paragraph 5.*

That respondent used injudicious, profane and obscene language from the bench on enumerated occasions, violating Canons 1, 2 and 3 of the Code of Judicial Conduct.

*Paragraph 6.*

That respondent has used injudicious, profane and obscene language off the bench and been abusive of court employees, attorneys and other members of the public, violating Canons 4, 5, 9 and 10 of the Canons of Judicial Ethics and Canons 1, 2 and 3 of the Code of Judicial Conduct.

*Paragraph 7.*

That respondent caused an interview held with the mother of a criminal defendant who had appeared before another judge to be taped and later to be played in open court, and that during the course of that interview respondent made abusive and disparaging remarks about certain attorneys, the county commission, a judge and the justice system in general, violating Canons 1, 2 and 3 of the Code of Judicial Conduct.

*Paragraph 9.*

That as a result of orders issued by respondent purporting to discharge the law firm under contract as public defenders, a superintending control order was

filed by the circuit court to the effect that visiting judges were to make determinations of indigency and appointments of counsel in criminal cases in the district court and that respondent violated that order, violating Canons 1, 2 and 3 of the Code of Judicial Conduct.

*Paragraph 11 (as amended).*

That respondent improperly sought to terminate the contract of the public defenders and attempted to terminate their appointments as counsel in pending cases and appointed substitute counsel in their stead, violating Canons 1, 2 and 3 of the Code of Judicial Conduct.

*Paragraph 12.*

That respondent made accusatory and disparaging public statements about members of the public defender's office and the prosecuting attorneys and that, as a result, respondent was disqualified from a broad spectrum of cases, violating Canons 1, 2 and 3 of the Code of Judicial Conduct.

The Master found that the conduct we have described as charged in paragraphs 3, 4, 5, 6, 7, 11 and 12 had been established. It was his conclusion, however, that Judge Bennett was guilty of misconduct in office or conduct prejudicial to the administration of justice only as to his use of his office to enter the Register of Deeds office after hours and some instances of his use of obscene and injudicious language off the bench. The Master declined to find that Judge Bennett had violated the superintending control order of the circuit court (paragraph 9 of the complaint) on the ground that no contempt order had ever entered.

The Commission found that allegations made in all of the enumerated paragraphs had been established and that each of the instances found amounted to misconduct in office or conduct prejudicial to the administration of justice.

We agree with the Commission that the record establishes Judge Bennett as having behaved as charged in the above enumerated paragraphs of

the complaint and that such behavior supports the imposition of discipline pursuant to Const 1963, art 6, § 30.

That provision of the Michigan Constitution authorizes this Court to discipline judges of this state for misconduct in office and conduct that is clearly prejudicial to the administration of justice. The record before us clearly shows that Judge Bennett has been guilty of such conduct.

## A.

Having reviewed the record, we first concur in the Commission's finding that Judge Bennett knowingly and willfully violated a superintending control order of the circuit court as alleged in Paragraph 9 of the complaint, summarized *supra.* We agree with the Commission that the undisputed facts warrant no other conclusion.

A long standing feud existed between Judge Bennett and members of the law firm which was serving as appointed public defender under a contract with the county, in consequence of which the judge unilaterally dismissed the firm from further representation of criminal case defendants under the contract. The law firm brought suit against Judge Bennett, claiming, inter alia, that their dismissal by respondent was beyond his authority. In connection therewith, two visiting circuit judges issued certain orders which included specific provisions barring Judge Bennett from appointing counsel for indigents in criminal cases and assigning that responsibility exclusively to visiting judges. The first order, which was issued with the approval of counsel for Judge Bennett, directed that visiting judges should appoint counsel for people who were found indigent by that judge and further provided "that Judge Bennett shall hear arraign-

ments, but, should a case arise where it may be necessary to appoint counsel, that question shall be deferred to the date of the visiting District Judge". In disobedience of this order which was issued following an oral statement by the visiting judge on the record setting forth the provisions which comprised the order, and reiteration of those terms on the record by a second visiting circuit judge a day after the first order was filed, respondent appointed counsel for indigents on a total of eight occasions. A second order was then filed stating that Judge Bennett was not to hear requests for appointed counsel or appoint counsel.

Judge Bennett said that he understood the order to say "for other judges to do it" and not that he was prohibited from appointing counsel. We agree with the Commission's conclusion that the respondent willfully violated the clear letter as well as the import and spirit of the court's order.

We believe Judge Bennett's conduct in this regard is conduct clearly prejudicial to the administration of justice. A judge is bound to show respect for the law. See Canon 2 of the Code of Judicial Conduct.[4] Through his violation of the circuit court

---

[4] Canon 2 of the Code of Judicial Conduct provides in part:

"A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

"B. A judge should respect and observe the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

The relevance of judicial canons in these kinds of cases is dealt with in GCR 1963, 932.4(d), adopted by this Court pursuant to Const 1963, art 6, § 30 which provides:

"Conduct in violation of the code of judicial conduct or code of professional responsibility and canons, whether the conduct complained of occurred before or after the respondent became a judge or was or was not connected with his judicial office, may constitute misconduct in office or conduct that is clearly prejudicial to the

order, Judge Bennett set a poor example for the community at large, suggesting by his behavior that he was above the law instead of subject to it. A member of the judiciary can only engender disrespect for the law and the office which he or she holds by disregarding lawful court orders. Such conduct necessarily hinders the administration of justice.

## B.

We further agree with the Commission and the Master that the record establishes that Judge Bennett used injudicious language, both on and off the bench, of a kind and to an extent that is violative of Canon 2 of the Code of Judicial Conduct (fn 4); that he was abusive of court employees, attorneys and others; and that publicly, in an interview with the mother of a criminal case defendant who had appeared before another judge, and elsewhere, he made disparaging remarks about certain attorneys in particular and the justice system in general. These allegations are contained in paragraphs 5, 6, 7 and 12 of the complaint.

The instances of unbecoming language *from the bench* are, for the most part, recorded in the transcripts of various proceedings. Included are the following:

"[Y]ou were bombed on your ass."

---

administration of justice or other cause delineated in Const 1963, art 6, § 30. The question in every case is whether the conduct complained of constitutes misconduct in office or conduct that is clearly prejudicial to the administration of justice or there is other cause delineated in Const 1963, art 6, § 30, not whether a particular canon or disciplinary rule has been violated. All the circumstances are to be considered in deciding whether action by the commission is warranted."

"[T]he defendant had a bad case of death resulting from numerous shotgun bullets up his ass * * * ."

"I don't know what in hell they'll do with you."

"[T]here's about as much chance as a snowball in hell of us ever getting any money out of you."

In addition, an attorney who appeared before respondent while he was a visiting judge in another county testified that, while presiding over a preliminary examination, Judge Bennett's audible reply to an objection stated by the lawyer during a bench conference was "bullshit". This reply was then repeated twice by respondent as the lawyer restated his objection and was loud enough to be heard by the court reporter.

There is also ample evidence that Judge Bennett regularly employed a variety of common obscenities and profane expressions in dealing with various persons while conducting court business.

While occasional use of off-color language by a judge in the privacy of his or her office or among close acquaintances would not necessarily amount to conduct supporting discipline, the record in this case shows that Judge Bennett, on several occasions, used such language in an entirely injudicious manner that can only have been expected to offend, berate or intimidate the persons to whom it was addressed.

A few of the more serious incidents are illustrative.

An attorney testified that Judge Bennett, while a probate judge,[5] became angry on one occasion and engaged him in a heated conversation in a hallway of the courthouse, called him a "dumb ass" and impugned the attorney's competence. Respondent later called the attorney a "son of a

---

[5] Respondent may be subject to discipline for conduct occurring prior to the assumption of the office he holds. See footnote 4.

bitch". The attorney testified that his client was present at the time. Judge Bennett could not recall the client's presence, but admitted there were others present in the corridor who could have overheard his outburst.

On another occasion, Judge Bennett, without warning, unleashed a particularly offensive tirade at the circuit court reporter who had somehow angered respondent by scheduling a trial with a visiting judge during a time when the district and probate courts were sharing quarters.[6]

A third example concerns statements made to the representative of an electronics company, who was in the district court for purposes of demonstrating court recording equipment. In a conversation with the representative, Judge Bennett referred to employees of the State Court Administrator's office as "bastards" and asked the salesman "who was paid off to get your equipment approved for use in the Court". Interestingly, the conversation was recorded by the equipment being demonstrated.

There is no dispute that in 1975 Judge Bennett interviewed a woman who was requesting information on whether it would be possible to get a conviction expunged from her son's record. The conversation was recorded and a transcript of it is part of the record of these proceedings. During the course of the conversation, Judge Bennett made some disparaging remarks about the prosecutor and about the public defenders who apparently had been appointed to represent the woman's son at preliminary examination and then were later retained by him for a fee. Judge Bennett also gossiped about the county commission, two other

[6] "Bob, if that fucking judge comes down here, I will throw him out on his fucking ass and every one of those fucking jurors."

attorneys, suggesting one was incompetent and the other an alcoholic, and compared the justice system to, among other things, "rolling dice".

Immediately following the conversation, respondent assumed the bench to preside over a trial in which a member of the public defender's firm appeared. Respondent insisted on playing the tape in the courtroom and refused to disqualify himself from the case which followed in which the maligned attorney was counsel of record.

Finally, the record shows that Judge Bennett made a number of other disparaging public remarks about the prosecutor and the public defenders. His public displays of prejudice toward these attorneys, including his summary dismissal of the public defender firm, discussed *infra,* resulted in his being disqualified from hearing any criminal cases during a part of 1975.

Judge Bennett's public use of profane, obscene and abusive language and abusive manner demonstrates a gross lack of judicial temperament and a violation of judicial canons[7] constituting conduct

---

[7] The Canons of Judicial Ethics, effective until October 1, 1974, provided:

Canon 4:

"A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach."

Canon 5:

"A judge should be temperate, attentive, patient, impartial, and since he is to administer the law and apply it to the facts, he should be studious of the principles of the law and diligent in endeavoring to ascertain the facts."

Canon 9:

"A judge should be considerate of jurors, witnesses and others in attendance upon the court."

Canon 10 (in part):

"A judge should be courteous to counsel, especially to those who are young and inexperienced, and also to all others appearing or concerned in the administration of justice in the court."

Our current Code of Judicial Conduct contains similar provisions.

that is clearly prejudicial to the administration of justice. As the judicial canons suggest, there is demanded of judges of this state the highest standards of personal and professional conduct. Judge Bennett's use of obscene and profane language on the bench and in his professional contacts with persons dealing with the court, necessarily demeaned the office he holds and the judiciary in general. His public disparagement of certain attorneys, county commissioners, and of the judicial system itself, must have prejudiced and left many doubtful of the impartiality and effectiveness of the administration of justice in Branch County and in this entire state. See *In the Matter of Del Rio,* 400 Mich 665; 256 NW2d 727 (1977); *Geiler v Commission on Judicial Qualifications,* 10 Cal 3d 270; 515 P2d 1 (1973); *Schoolfield v Tennessee Bar Ass'n,* 209 Tenn 304; 353 SW2d 401 (1961).

## C.

It was next found by the Commission, as had the Master, that Judge Bennett, while probate judge, had actively and improperly participated in a partisan political campaign as alleged in Para-

---

Canon 1:

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. A judge should always be aware that the judicial system is for the benefit of the litigant and the public, not the judiciary. The provisions of this Code should be construed and applied to further those objectives."

Canon 2:

See footnote 4, *supra.*

Canon 3A(3):

"A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of his staff, court officials, and others subject to his direction and control."

graph 3 of the complaint. We agree that the record amply supports this finding.

While himself a candidate for the office of district judge, Judge Bennett, before a high school social studies class, produced documents discrediting one of the candidates in a primary election campaign for legislative office. A telegram concerning alleged marijuana charges brought against the candidate, and a traffic ticket issued to him, were produced by respondent and discussed with the class in a manner manifestly disparaging of the candidate. Judge Bennett also indicated to the students that the candidate had not graduated from law school as claimed by him.

The evidence before us further establishes that Judge Bennett discussed his political activities with a reporter for a Battle Creek newspaper whom he told, with an apparent view to publication or disregard for the possibility thereof, that "he was stuffing and making signs for" a partisan political candidate in that same primary election. He also repeated the derogatory "information" about one of the candidates that had been discussed with the high school class, said that a third candidate was his "real target", and asserted that it is not improper for a judge to participate in a nonjudicial election.

Judge Bennett's conduct in this regard violated judicial canons then in effect.[8] His efforts on behalf

---

[8] Canon 28 of the Canons of Judicial Ethics in pertinent part provided:

"While entitled to entertain his personal views of political questions, and while not required to surrender his rights or opinions as a citizen, it is inevitable that suspicion of being warped by political bias will attach to a judge who becomes the active promoter of the interests of one political party as against another. He should avoid making political speeches, soliciting payment of assessments or contributions to party funds, the public endorsement of candidates for political office and participation in party conventions.

"Nothing herein contained, however, shall prevent the judge from

of and against candidates for political office, as illustrated by his conduct before a high school class and with a newspaper reporter, were bound to come to the attention of large segments of the community. The fact that the students may have asked him about the telegram or the ticket in no way excuses his behavior. Judge Bennett's misconduct is particularly serious since he not only became involved in a partisan political campaign, but, as the record establishes, engaged in "mudslinging". We believe that Judge Bennett's conduct in this connection could only result in diminished public confidence in the independence and impartiality of the judiciary and that it constitutes conduct clearly prejudicial to the administration of justice.

### D.

We further agree with the Commission's finding that Judge Bennett's dismissal of the public defender firm and his replacement of them in all pending cases was clearly prejudicial to the administration of justice.

As mentioned *supra,* two orders of the circuit court were entered in a suit initiated by the public defender firm restricting the power to appoint counsel for indigent defendants to visiting district judges after Judge Bennett had unilaterally terminated the contract providing for the performance of these services by a local law firm.

The agreement for the firm's services had been executed by the circuit judge, the district judge

---

participating in partisan politics to the extent of attending political gatherings the same as he did before his elevation to the bench * * *.

"He should neither accept nor retain a place on any party committee nor act as party leader, nor engage generally in partisan activities."

(respondent), a county commissioner and the county clerk. Although the contract contained a termination provision, we agree with the majority opinion of the Commission that Judge Bennett's action exceeded the scope of his authority.[9]

On September 5, 1975, respondent informed the law firm in question of his decision to terminate their services and signed four orders effectuating his intentions. The orders terminated the contract, stopped payment pursuant to it, substituted other counsel in "cases wherein there have been filed charges that are within the trial jurisdiction of the District Court" and made a similar substitution for cases "not within the trial jurisdiction of the District Court".

The majority of the Commission said:

"While appointment of counsel for indigents is essentially a judicial function, and while it is clearly a part of that function to assure adequate representation of indigents, respondent's unilateral and summary dismissal of the public defenders and his substitution of new counsel in all pending cases without statement of cause or justification, had the inevitable effect not only of interfering with the attorney-client relationship, but of giving the appearance of arbitrary and capricious exercise of judicial power."

It was with respect to this finding that the dissenting members of the Commission disagreed; but

---

[9] The contract provided:

"10. Termination. This contract is subject to termination if, in the opinion of the judges, the attorneys are not performing their contract obligations in a manner that is in the best interests of those persons who are entitled to counsel by order of the judge of the Branch County District and Circuit Court, and whom attorneys have been appointed to represent. Upon termination for any reason the attorneys shall continue to represent those indigent persons whom he has been appointed to represent, until final disposition of those pending proceedings, at a pro-rate per month."

even they were of the opinion that Judge Bennett's actions were injudicious.[10]

Judge Bennett later explained the termination as being motivated by the disclosure, mentioned *supra,* that the public defenders had been appointed in a particular case and at some point had apparently collected a fee in connection therewith. While Judge Bennett's concern on hearing that information is understandable, we believe he responded in a wholly inappropriate manner. Without seeking any additional facts or explanation, Judge Bennett took the described action.

This conduct was clearly prejudicial to the administration of justice in at least two respects. First, Judge Bennett interfered with the attorney-client relationship in pending cases in which substitute appointments were made. Indigent defendants were thereby cut off from their counsel without request or explanation and their cases would necessarily have been disrupted. See *Geiler v Commission on Judicial Qualifications, supra.* Indeed, the superintending control orders described above reinstated the contract firm in pending cases.

Second, Judge Bennett's action, even if the reason given by him for taking it is accepted, is further evidence of a lack of judicial temperament. It gave the appearance not of a judicious reasoned decision, but rather of an arbitrary exercise of judicial power.

### E.

Finally, we find that Judge Bennett abused his

---

[10] The Commission minority stated:

"While we feel the matter could have been handled in a more judicious manner in cooperation with the County Commissioners, we are not convinced that such conduct constituted judicial misconduct clearly prejudicial to the administration of justice."

judicial powers by entering the County Register of Deeds office after hours and without authorization, through exertion of his authority as a judge. This activity resulted in Judge Bennett's being admonished in the minutes of the county commission. Even respondent admitted the incident was unfortunate because it became a matter of some notoriety. The incident must have, in the eyes of many, clouded the image of the justice system as able to dispense justice fairly and evenly to all. We have previously found similar arbitrary abuse of the judicial powers to amount to conduct supporting discipline. See *In the Matter of Del Rio, supra.*

## II

As described above, the record establishes that Judge Bennett has engaged in numerous incidents of conduct warranting discipline. We agree with the Commission majority's assessment that Judge Bennett's behavior has demonstrated a pattern of conduct showing insensitivity to the requirements of propriety in judicial conduct that constitutes judicial misconduct.

In *In the Matter of Del Rio, supra,* we quoted from *In re Greenberg,* 442 Pa 411, 416; 280 A2d 370 (1971), and Tamm, *Are Courts Going the Way of the Dinosaur?,* 57 ABA J 228 (March, 1971):

"For generations before and since it has been taught that a judge must possess the confidence of the community; that he must not only be independent and honest, but, equally important, believed by all men to be independent and honest. A cloud of witnesses testify that 'justice must not only be done, it must be seen to be done.' Without the appearance as well as the fact of justice, respect for the law vanishes in a democracy."

The point, then, as also reflected in our judicial canons and opinions dealing with other judicial misconduct cases, is that a judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench. Or, in the words of Canon 2 of the Code of Judicial Conduct, "He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen * * * ."

We believe Judge Bennett's conduct has fallen short of this goal. The instances of misconduct we have described must have displayed to the public an image of prejudice, disrespect for lawful authority and lack of patience that can only have eroded public confidence in the judicial system and the office of judge.

The majority of the Judicial Tenure Commission, after finding Judge Bennett guilty of judicial misconduct, recommended his removal from office observing:

"In our opinion, the pattern of respondent's behavior demonstrates that he lacks the kind of judicial temperament which is required of one holding judicial office. We do not believe that such a glaring lack of judicial temperament can be corrected by a few months of suspension. It is therefore our recommendation to the Supreme Court that respondent should be removed from the judicial office which he holds."

Whether a suspension from office of any duration will have the desired corrective influence upon Judge Bennett's judicial temperament and

behavior is impossible to predict with certainty. But because we believe that a more appropriate period of suspension may well have such effect, and because we are persuaded that the judicial misconduct of which we find Judge Bennett guilty, while demonstrably serious, does not warrant removal from office, we respectfully decline to adopt the recommendation of the Commission.

Instead, we order that Judge Bennett be suspended from judicial office for a period of one year without pay. The order of suspension shall apply regardless of Judge Bennett's election to another judicial office. Final process to effectuate this order of suspension shall issue immediately upon release of this opinion.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.