IN THE MATTER OF BINKOWSKI

Docket No. 71941. Argued October 4, 1984 (Calendar No. 14).—Decided December 28, 1984.

. The Michigan Judicial Tenure Commission found the Honorable Don Binkowski, judge of the 37th District Court, guilty of dishonest conduct clearly prejudicial to the administration of justice and misconduct in office in altering a letter sent to him by the commission regarding its review of grievances filed against the judge so as to convey the false and misleading impression that the grievances had been dismissed without a finding of impropriety and distributing the altered version to his fellow judges of the district court. The commission recommended public censure. Judge Binkowski petitions the Supreme Court to reject the recommendation of the commission.

In a unanimous opinion per curiam, the Supreme Court *held:*

Judge Binkowski's actions constitute conduct clearly prejudicial to the administration of justice and misconduct in office. The proceedings in this matter and the opinion of the Supreme Court have accomplished and will stand as the public censure of Judge Binkowski.

1. Following an investigation into charges of favoritism in unrelated cases by a subcommittee of the Judicial Tenure Commission during which Judge Binkowski acknowledged that his actions were inappropriate, the commission sent Judge Binkowski a letter indicating its disapproval of the actions, but tempering its perception of their gravity because Judge Binkowski had indicated that he recognized that the actions were improper and would not be repeated. After receiving the letter, Judge Binkowski modified it by retaining the letterhead and superimposing it over the final paragraph which stated that no further action was required and that the grievances were dismissed. The altered letter was then given to two other judges of the 37th District Court. Judge Binkowski admitted the alteration and dissemination, but denied an intent to deceive, citing political considerations as his motive. A master found the

REFERENCES FOR POINTS IN HEADNOTE
7 Am Jur 2d, Attorneys at Law § 71.
46 Am Jur 2d, Judges § 19.

acts to be dishonest and recommended private censure. The commission, after receiving the master's report, recommended public censure.

2. Judge Binkowski's contention that the commission lacked authority to issue the letter of admonishment and that therefore no sanction can be imposed for altering it and disseminating the altered version is disingenuous in the extreme. Regardless of whether the commission could impose this level of "punishment," the fact remains that the respondent took it upon himself to alter the commission's communication in a manner calculatingly designed to give the impression that the altered version constituted the complete communication. The proceedings in this matter have not been invoked to test the legality of admonishing the respondent, and the respondent's attempt to avoid the consequences of his actions by virtue of a challenge to the power of the commission to issue the letter in question must be rejected *in toto.* Respondent's argument that he has been denied due process because he was never afforded an opportunity to cross-examine those who had filed the original requests for investigation which ultimately resulted in the letter of reprimand is also meritless. The question in controversy in this matter is not the legitimacy of the contentions of those who filed the requests for investigation. A judge, at any level of the court system presides at the focal point of the administration of justice. For that reason, a judge must be held to the highest standard of any public official. Judge Binkowski's conduct in this matter was designed to convey to his colleagues the erroneous impression that the outcome of the commission's inquiry into the grievances which had been filed was a straightforward and unencumbered dismissal of those grievances.

JUDGES — CONDUCT IN OFFICE.

A judge, at any level of the court system, presides at the focal point of the administration of justice; for that reason, a judge must be held to the highest standard of any public official.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Sheldon L. Miller)* and *Henry, Lewandowski & Myles* (by *Daniel J. Henry, Jr.,* and *Paul H. Stevenson),* of counsel, for Judge Binkowski.

*Joseph F. Regnier,* Executive Director and General Counsel, Michigan Judicial Tenure Commis-

sion, and *Thomas L. Prowse* for the Judicial Tenure Commission.

Per Curiam. The matter is before this Court pursuant to the recommendation of a majority[1] of the Judicial Tenure Commission that the respondent be publicly censured for his admitted act of proffering to others only a part of a letter sent to him by the Judicial Tenure Commission. It is asserted by the commission that the circulation of the edited letter conveyed the false and misleading impression that certain grievances had been dismissed by the commission without any finding of impropriety on the part of the respondent. In recommending public censure of the respondent, the commission has concluded that respondent's conduct was "dishonest" and constitutes conduct clearly prejudicial to the administration of justice and misconduct in office, citing Const 1963, art 6, § 30, and GCR 1963, 932.4(b).

I

On May 15, 1981, an attorney filed with the commission a request for investigation of the respondent. The request for investigation alleged partiality by the respondent with regard to the processing of certain misdemeanor charges against a Macomb County Commissioner. In addition it was alleged that in response to the filing of a motion to disqualify the respondent in one of the aforementioned cases the respondent had attacked the integrity or competence of various persons, including the individual who had filed the request for investigation, by typing statements on unrelated court files designed to achieve that effect.

[1] Five members of the Judicial Tenure Commission recommended public censure of the respondent. Three members dissented.

On November 9, 1981, a separate request for investigation dealing with a matter related to the previous request was filed by a different complainant.

On February 4, 1982, the respondent met with a subcommittee of the commission to discuss these allegations. On this occasion the respondent acknowledged that his actions with regard to the charges against the Macomb County Commissioner and with regard to the making of the previously mentioned entries in unrelated court files were inappropriate. The respondent indicated that there would be no repetition of such conduct.

On February 8, 1982, the commission sent respondent a letter the full text of which is as follows:

*"PERSONAL & CONFIDENTIAL*

"The Honorable Don Binkowski
Judge, 37th District Court
8300 Common Road
Warren, Michigan 48093

"Re: *Grievances #81-1932 and #81-2071*

"Dear Judge Binkowski:

"Please be advised that the Judicial Tenure Commission has completed its review of the grievances concerning which your response was previously invited, and with respect to which you appeared before a subcommittee of the Commission on February 4, 1982.

"It is the considered view of the Commission that your conduct in connection with the *Myslakowski* cases was inappropriate in certain respects, as was pointed out by the Commission subcommittee. At that time, it was indicated, and the Commission again would reiterate, that a disinterested observer might reasonably interpret such conduct on your part as reflecting partiality or favoritism towards Mr. Myslakowski.

"The Commission must also express its disapproval of your practice in making extraneous entries on court files at the 37th District Court. These notations on public records serve no legitimate purpose, unnecessarily demean the object of the notations, denigrate respect for your own office and person, and raise serious doubts in the mind of the public concerning the judiciary's ability to dispense justice in a fair and impartial manner. However, the Commission's perception of the gravity of this conduct is tempered by your recognition that such actions were improper, and your representation that there will be no repetition of this practice on your part.

"There being no need for further action, the Commission has, accordingly, dismissed the above grievances.

"Very truly yours,

"/s/ Michael J. Kelly

"Michael J. Kelly<br>
Chairman

"MJK:jtk<br>
"cc: All Commissioners"

It is important to note for purposes of the present proceedings that only the final paragraph of the letter reading:

"There being no need for further action, the Commission has, accordingly, dismissed the above grievances."

appeared on page 2 of the letter.

The respondent, after receiving this letter, modified it by retaining the letterhead of the commission found on page one, folding it over, and superimposing it over page two. As modified by the respondent the letter now read:

"*PERSONAL & CONFIDENTIAL*

"The Honorable Don Binkowski

Judge, 37th District Court
8300 Common Road
Warren, MI 48093

"Marrocco          Kennedy [both names handwritten]

"Re: *Grievances #81-1932 and #81-2071*

"Dear Judge Binkowski:

"There being no need for further action, the Commission has, accordingly, dismissed the above grievances.

"Very truly yours,

"*/s/ Michael J. Kelly*

"Michael J. Kelly
Chairman

"MJK:jtk

"cc: All Commissioners"

The names "Marrocco" and "Kennedy" were handwritten on the altered letter and were the surnames of the two individuals thought by the respondent to have been those who had filed requests for investigation of the respondent with the commission.

Soon after producing the altered letter, the respondent disseminated it to two of his fellow judges of the 37th District Court, Judge Sherman Faunce and Judge George E. Montgomery. Both Judge Faunce and Judge Montgomery testified that they perceived the altered letter supplied to them by the respondent to be the complete document. Within a few days after dissemination of the altered letter successful efforts were made either by respondent or someone on his behalf to retrieve the copies.

The respondent admitted that he had provided the altered letter to his two colleagues. When asked by the master why he had altered the letter he replied:

"Your Honor, for me to reveal the admonishment by the Commission, in view of a very bitter 1980 campaign, would be to commit political hara-kiri. I thought that the letter was confidential to me, and I was free to do with it whatever I wanted to do in whatever I wanted to do."

The respondent denied that he had intended to deceive anyone by altering the letter in question.

## II

NATHAN J. KAUFMAN, a former judge of the Michigan Court of Appeals, was appointed to act as master in this matter. After hearing evidence, he issued his report in this matter in which he stated in relevant part:

"Your Master concludes that the act of respondent in changing the Judicial Tenure Commission letter, Exhibit C, was not honest. Furthermore, I find that his explanation was a very foolish one—that he did his dishonest acts in the interest of politics.

"Your Master also concludes that the other charges were not established. Further, no one testified as to the respondent's conduct on the bench, his legal abilities, or his moral behavior. And, while the acts were dishonest, I believe that the matter should have been disposed of after preliminary investigation with private censure in accordance with GCR 1963, 932.7(c); *In re Somers,* 384 Mich 320; 182 NW2d 341 (1971)."

A majority of the commission, after receiving the report of the master, has recommended that the respondent be publicly censured. In reaching this conclusion, the majority observed:

"On its face, we find Respondent's conduct to involve a material alteration of the Commission's communication of February 8, 1982.

"We further find that Respondent's action in dissemi-

nating a significantly modified version of the notice of disposition conveyed a false and misleading impression concerning the manner in which the grievances had been disposed of by the Commission.

"We base this conclusion, in part, on the testimony of the Hon. George E. Montgomery and the Hon. Sherman P. Faunce, who were the chosen recipients of Respondent's truncated letter. Both of Respondent's fellow judges at the 37th District Court testified that they had viewed the letter as a copy of a formal communication from the Commission advising Respondent the grievances were dismissed. They perceived the letter as being complete and no question arose in their minds of it being less than the entire original communication. We also note the fact neither Judge Montgomery nor Judge Faunce testified that the alleged existence of copy lines or marks on Respondent's version of the letter gave indication the letter did not purport to be complete. We, therefore, find unpersuasive Respondent's assertion that marks arising from his copying of the letter gave ready notice that the modified communication was only a portion of a more detailed letter. The testimony of the Hon. Thomas E. Kennedy on these points is also corroborative of Judge Montgomery's and Judge Faunce's testimony."

Finally, the commission concluded:

"We hold that Respondent's conduct was 'dishonest,' being contrary to GCR 1963, 953(3), as found by the Master, and, further, would necessarily effect public confidence in the judiciary and hinder the administration of justice. It, therefore, constitutes conduct clearly prejudicial to the administration of justice and misconduct in office within Const 1963, art 6, § 30, and GCR 1963, 932.4(b).

\* \* \*

"Respondent's conduct, as set forth in the Amended Complaint, evidences his studied indifference, if not outright disregard, of the special ethical obligations incumbent on members of the judiciary. Further, the

Respondent has, while admitting the salient facts, vocally asserted that his actions were proper in every respect.

"In our view, this course of conduct reflects Judge Binkowski's inability or unwillingness to abide by the expressed expectations of the Supreme Court that judges of this State must adhere to the '* * * highest standards of personal and professional conduct.' *In the Matter of Bennett,* 403 Mich 178, 193; 267 NW2d 914 (1978). The Respondent has thereby made himself a fit subject for disciplinary action by the Supreme Court.

"Wherefore, we respectfully recommend to the Michigan Supreme Court that Respondent be publicly censured in accordance with Const 1963, art 6, § 30 and GCR 1963, 932.25."

### III

As a preliminary matter we address the contention of the respondent that the commission's letter of February 8, 1982, which he admittedly altered, was a letter of "admonishment" and that the commission lacked the authority to issue such a letter.[2] The argument is that if the commission lacked the authority to issue a letter of "admonishment" there can be no sanction imposed for altering it and disseminating the altered version.

This argument is disingenuous in the extreme, and the very fact that it is being advanced gives us pause. Regardless of whether the commission could impose this level of "punishment," the fact remains that the respondent took it upon himself to alter the commission's communication in a manner calculatingly designed to give the impression that the altered version constituted the complete communication. The instant proceedings have not been invoked to test the legality of admonishing

---

[2] By order dated July 1, 1984, this Court expressly authorized admonishment as a form of "punishment" available to the Judicial Tenure Commission. GCR 1963, 932.7(c)(ii).

the respondent. We reject *in toto* respondent's attempt to avoid the consequences of his actions by virtue of a challenge to the power of the commission to issue the letter in question.

Respondent also argues that he has been denied due process in that he was never afforded an opportunity to cross-examine those who had filed the requests for investigation which ultimately resulted in the letter of reprimand. Once again we reiterate that the question in controversy in these proceedings is not the legitimacy of the contentions of those who filed the requests for investigation. Respondent's argument in this regard is meritless.

As recently as in *In the Matter of Evan Callanan, Sr,* 419 Mich 376, 386; 355 NW2d 69 (1984), we had the occasion to state:

"A judge, at any level of the court system presides at the focal point of the administration of justice. For that reason, a judge must be held to the highest standard of any public official."

We are persuaded that the respondent's conduct in this matter was designed to convey to his colleagues the erroneous impression that the outcome of the commission's inquiry into the grievances which had been filed was a straightforward and unencumbered dismissal of those grievances. The respondent's colleagues testified that such was the conclusion which they drew from what was communicated to them. We are unconvinced by respondent's assertion that in altering the commission's letter he had no intent to deceive his colleagues. We accept the conclusion of the majority of the commission that the respondent's actions were indeed dishonest.

We conclude that the respondent's actions con-

stitute conduct that is clearly prejudicial to the administration of justice and misconduct in office. Const 1963, art 6, § 30; GCR 1963, 932.4(b).

The commission's recommendation is for public censure of the respondent. We conclude that the proceedings in this matter have already accomplished such a purpose, and we are content to let them and the opinion of this Court stand as the public censure of the respondent.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred.