*Order Entered June 28, 1985:*

In re TSCHIRHART, No. 75088. This Court has received the Decision and Recommendation of the Judicial Tenure Commission in this matter together with the respondent's consent to the recommendation of the commission that he be publicly censured. After due consideration of this matter:

1) We adopt the finding by the commission that the statements of the respondent set forth in its Decision and Recommendation render respondent "guilty of conduct clearly prejudicial to the administration of justice and misconduct in office which undermines the effectiveness of the judiciary in Michigan and engenders public disrespect."

2) In the case of *In re Bennett,* 403 Mich 178, 199 (1978) we indicated:

"The point, then, as also reflected in our judicial canons and opinions dealing with other judicial misconduct cases, is that a judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench. Or, in the words of Canon 2 of the Code of Judicial Conduct, 'He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen . . . .' "

3) This order shall stand as our public censure of the respondent. It is our expectation that the conduct which gave rise to this complaint and subsequent proceedings will not be repeated.

---

"STATE OF MICHIGAN
"BEFORE THE MICHIGAN JUDICIAL TENURE COMMISSION

"IN THE MATTER OF:
    HON. DANIEL L. TSCHIRHART
    Judge, 54B District Court                    FORMAL COMPLAINT No. 32

East Lansing, Michigan

"COMMISSION DECISION AND RECOMMENDATION
"I

"On October 9, 1984, by order of the Supreme Court, the Honorable Frank E. Jeannette was appointed as Master to preside over the hearing on Formal Complaint No. 32 of the Michigan Judicial Tenure Commission against the Honorable Daniel L. Tschirhart, Judge, 54B District Court, East Lansing, Michigan. The Master submitted his report on January 18, 1985, 30 days after the December 18, 1984, hearing. The Respondent filed his Objections to the Report on January 31, 1985. The Examiner filed its Petition to Adopt the Report of the Master on February 8, 1985, and its Brief to the Commission was filed March 4, 1985. The matter was called for hearing before the Commission on March 11, 1985. Oral argument on behalf of Respondent was presented by his attorney, Thomas A. Bengtson. Argument on behalf of the Examiner was given by Joseph F. Regnier, Examiner.

"II

"Upon due consideration of the Master's ten page report containing findings of fact and conclusions of law, upon consideration of the record, including Respondent's Objections to the Report of the Master, and examination of briefs filed on behalf of Respondent and Examiner, the Commission adopts the Master's findings of fact and conclusions of law *in toto.*

"Upon review of the record, examination of the briefs of the parties, exhibits admitted, and the Report of the Master, the Commission finds that the facts were not materially in dispute. From the onset of the investigation the Respondent has admitted his arrest and subsequent acquittal on charges that he defrauded a Nevada cab driver of a round-trip fare to a legal brothel. So, too, he admitted that within days of the incident, he granted an interview with a reporter he knew from the Lansing State Journal and that during the interview he made several remarks of the incident including the following:

"(a) 'You bet I would do it again, under the same circumstances. I'm more concerned about my principles than public reaction on an emotional basis about something that doesn't even count.' Lansing State Journal, April 22, 1984.

"(b) 'I will fight the charge that I defrauded a Nevada taxi driver, even if it means generating publicity about my visit to a legal brothel there.' Alpena, Michigan, News, April 20, 1984.

"(c) 'I enjoyed it. It was fun. There's nowhere like it in the world.' Lansing State Journal, April 22, 1984; Flint Journal, April 23, 1984.

"(d) 'Although I'm not in favor of legalized prostitution, the trade was handled a lot better in Mustang Ranch than it was on East Michigan Avenue in Lansing.' Lansing State Journal, April 22, 1984.

"He also admitted that in the course of the interview he rendered comments concerning certain other controversial incidents marking his judicial career. These include:

"(a) On the Michigan State University gang rape trial which he dismissed in 1983, he said he still receives hate mail and telephone calls from across the country. He commented:

" 'How am I supposed to have respect for those people who call me up and tell me they wish that kind of violence on my wife or daughter. This woman from California who's been on my case called and said just that. I said "same to you honey." ' Lansing State Journal, April 22, 1984; Flint Journal, April 23, 1984.

"(b) Other comments about the Michigan State University gang rape trial included his recommendation that the Ingham County Prosecutor's Office be taken to task for pursuing the case as far as it did. He remarked:

" 'This was a noteworthy case. Was the attorney Don Williams, whom they sent to prosecute it, the best, most seasoned trial attorney they had to handle it? If so, this county is in trouble.' Lansing State Journal, April 22, 1984.

" '. . . (w)as this a token effort by Mr. Houk to give lip service to certain political factions? If this was a serious effort at prosecution, where was he when this case was being tried before the nation? Everybody in the legal community knows this case was a joke.' Lansing State Journal, April 22, 1984.

"(c) On the fact that his ex-wife took him to court in 1982 to collect $7,025 in delinquent child support payments, the Respondent declared:

" 'I paid $45,000 over the last three years in after-tax dollars for child support. Ask them how much they spent on their children.' Lansing State Journal, April 22, 1984.

"Finally, regarding his plans to run for re-election, he admits he remarked:

" 'I probably will run again in 1986 just so I can raise a little more hell.' Lansing State Journal, April 22, 1984; Detroit Free Press, April 23, 1984.

"In light of the Respondent's factual concessions, the sole question before the Master was the conclusion of law that Respondent's media defense of the Reno incident and public comments regarding other controversial incidents concerning him constituted conduct clearly prejudicial to the administration of justice and misconduct in office. After attentive study of the record and consideration of arguments made on both sides, the Commission finds, in accordance with the Master, that the statements of Respondent bring the judicial office, and the judiciary in general, into disrepute and that such disrespectful, defiant and inappropriate comments constitute judicial misconduct.

"The proper administration of justice requires that the Commission view the Respondent's actions in an objective light. The focus is necessarily on the impact his statements might reasonably have upon knowledgeable observers. Although the Respondent's subjective intent as to the meaning of his comments, his newly exhibited remorseful-

ness and belated contrition all properly receive consideration, any such individual interests are here necessarily outweighed by the need to protect the public's perception of the integrity of the judiciary.

"As the Master observed, the Respondent did not merely grant a media interview to respond to the charge of the Nevada cab driver, but made a series of defiant, flippant, and disparaging remarks which could only serve to erode public confidence in the judiciary. Additionally, the record indicates that Respondent was aware before he made the comments, that publicity concerning the Reno incident would likely bring a complaint against him by the Judicial Tenure Commission. Nevertheless, he defiantly declared to the media:

" 'I will fight the charge that I defrauded a Nevada taxi driver, even if it means generating publicity about my visit to a legal brothel there. . .[.] I'm more concerned about my principles than public reaction on an emotional basis about something that doesn't even count.'

"Moreover, the Respondent testified at the hearing that he realized, before he made the remarks, that they might 'cause a little aspersion upon the judiciary.' (12-18-84 Tr., p. 51). Despite this and in complete disregard of his ethical obligation under Canon 2 of the Code of Judicial Conduct, he granted the interview to the State Journal and another to WILX Channel 10 expounding his views on not only the Reno incident but other controversial incidents concerning him as well. To add fire to the undeniable controversy he was creating, he then, in a defiant, brazen manner, declared:

" 'I probably will run again in 1986 just so I can raise a little more hell.'

"The Commission can only agree with the conclusion of the Master that this statement, 'has a particularly odoriferous appearance in the context it was uttered' and that '[t]he ordinary reader would conclude respondent is referring to a course of conduct in disregard of the law. . . .' (Master's Report, p. 8).

"III

"Canon 2A of the Code of Judicial Conduct provides:

" 'Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. *A judge must avoid all impropriety and appearance of impropriety.* He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.' (Emphasis added[.])

"According to the Michigan Supreme Court, the Canon requires that a judge behave as if he were always on the bench.

"The Court, in *[In re] Bennett*, declared:

" 'As the judicial canons suggest, there is demanded of judges [of] this state the highest standards of *personal* and professional conduct.' (Emphasis added.) 403 Mich 178, [193] (1980) [*sic*, 1978].

"The Respondent's remarks to the media stand as blatant evidence of his indifference to the ethical obligations incumbent on his office

and constitute an undeniable display of his callous disregard for the necessity of avoiding the appearance of impropriety. A judge must be and must be perceived to be a person of absolute integrity. When a judge's character and morals come into question not only do the people lose respect for him as a person, but worse, respect for the Court over which he presides is lost as well.

"IV

"WHEREFORE, the Michigan Judicial Tenure Commission, having adopted the findings of fact and conclusions of law of the Master finds that Judge Tschirhart is guilty of conduct clearly prejudicial to the administration of justice and misconduct in office which undermines the effectiveness of the judiciary in Michigan and engenders public disrespect. The Commission therefore recommends discipline for the further protection of the public and the judiciary and respectfully submits that public censure is mandated to vindicate the public interest in connection with these findings of misconduct.

"ACCORDINGLY, we respectfully recommend to the Michigan Supreme Court that Respondent be publicly censured in accordance with Const 1963, Art VI, Sec 30 and MCR 9.225.

"JUDICIAL TENURE COMMISSION
OF THE STATE OF MICHIGAN

"By:  /s/ _____
Thomas J. Foley, Chairman
/s/ _____
John S. Abbott
/s/ _____
James R. McCann
/s/ _____
Marjorie Peebles-Meyers
/s/ _____
Harold E. Resteiner
/s/ _____
James S. Thorburn

"Commissioners Kelly and Groner were absent when the Commission considered this matter. Commissioner Farhat disqualified himself.

"DATED: MARCH 27, 1985."

"CONCURRING OPINION AND RECOMMENDATION

"I concur in the decision and recommendation of the Commission.

"The decision and recommendation of the Commission contains the following citation:

" 'According to the Michigan Supreme Court, the Canon requires that a judge behave as if he were always on the bench.'

" 'The Court, in *[In re] Bennett,* declared:

" ' "As the judicial canons suggest, there is demanded of judges [of] this state the highest standards of *personal* and professional conduct." (Emphasis added.) 403 Mich 178, [193] (1980) *[sic,* 1978].'

"It also contains the quote of the respondent to the effect that:

" 'I will fight the charge that I defrauded a Nevada taxi driver, even if it means generating publicity about my visit to a legal brothel there. . .[.] I'm more concerned about my principles than public reaction on an emotional basis about something that doesn't even count.'

"The fact that brothels are legal in the state of Nevada does not permit a Michigan judge outside his jurisdiction to participate.

"Obviously, the standard that must be applied is the Michigan standard and not the Nevada standard, the South African standard, the Argentinian standard or any other standard.

"A visit of a Michigan judge to a Nevada brothel is judicial misconduct for a Michigan judge.

"Accordingly, I respectfully recommend to the Michigan Supreme Court that the respondent be publicly censured in accordance with the Commission's decision and recommendation and also including this recommendation.

<div style="text-align:center">

"JUDICIAL TENURE COMMISSION
OF THE STATE OF MICHIGAN

"By:   /s/ _____

James S. Thorburn
Commissioner"