### IN THE MATTER OF LAWRENCE

Docket No. 70171. Argued April 7, 1983 (Calendar No. 20).—Decided June 27, 1983.

The Michigan Judicial Tenure Commission found the Honorable Edward W. Lawrence, judge of the 43rd District Court, guilty of judicial misconduct in improperly using his office to assign indigent criminal cases to and allow appearances by attorneys with whom he had financial ties, maintaining an interest in a business which held a Michigan liquor license, accepting free personal legal representation from and assigning indigent criminal cases to an attorney, improperly using his office to influence the securing of a license by a personal acquaintance, and improperly reporting and retaining campaign funds. The certification of the record and the decision of the commission were filed with the Supreme Court. The commission recommended suspension. Judge Lawrence petitions the Supreme Court to reject the commission's decision and recommendation.

In a unanimous opinion by Chief Justice Williams, the Supreme Court, after a review of the record *de novo, held:*

The allegations of misconduct were supported by the evidence. The actions were misconduct in office and conduct clearly prejudicial to the administration of justice. The recommendation of the commission that Judge Lawrence be publicly censured, be suspended from all judicial and administrative responsibility without pay for nine months, be ordered to pay costs, and be ordered as a condition of reinstatement to return certain campaign funds improperly retained to contributors or to remit to the State Bar Client Security Fund the amount of $5,667.97 is adopted.

1. Disciplinary action against a judge may be warranted even where neither a particular canon of the Code of Judicial Conduct nor a canon or disciplinary rule of the Code of Profes-

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judges § 50.
[2, 4] 46 Am Jur 2d, Judges §§ 98, 119.
[3] 46 Am Jur 2d, Judges § 99.
[5] 46 Am Jur 2d, Judges § 119.
[6, 7] 46 Am Jur 2d, Judges § 61.

sional Responsibility is violated. In this case, however, Judge Lawrence, by permitting attorneys with whom he had financial ties to appear before him and by assigning them to represent indigent criminal defendants, violated canons of the present and former standards of judicial conduct. His actions were clearly prejudicial to the administration of justice and raised the appearance of favoritism and economic self-interest.

2. The Michigan Liquor Control Act proscribes any direct or indirect interest in a liquor license by an officeholder, such as a judge, or his spouse. Judge Lawrence maintained an active interest in a corporation which held such a license and later participated in the sale and assignment of the license in violation of the statute. His conduct amounted to misconduct in office.

3. Judge Lawrence's acceptance of and failure to report free legal representation by an attorney coupled with the subsequent assignment of the attorney to represent indigent criminal defendants at public expense violated present and former standards of judicial conduct.

4. Judge Lawrence materially misrepresented the job requirements of an acquaintance to the Oakland County Concealed Weapon Licensing Board, which influenced the issuance by the board of a permit to carry a pistol. Such conduct violates both the Code of Professional Responsibility and the Code of Judicial Conduct.

5. The campaign financing act permits an elected public official to establish an officeholder expense fund which may be used for incidental office expenses, but not for campaign expenditures. However, the Code of Judicial Conduct clearly prohibits the maintenance of an expense account consisting of funds contributed for a judge's campaign. Under the code, funds remaining after payment of campaign expenses must either be returned to their contributors or donated to the Client Security Fund of the State Bar. Judge Lawrence was apprised of the conflict by the State Court Administrative Office, but retained the majority of excess funds in an officeholder expense fund in violation of the code.

1. JUDGES — JUDICIAL TENURE COMMISSION — MISCONDUCT.

The Judicial Tenure Commission may recommend disciplinary action against a judge where, considering all the circumstances surrounding his actions, his conduct amounts to misconduct in office or conduct which is clearly prejudicial to the administration of justice; it is not necessary that a particular canon of judicial conduct or professional responsibility be violated or

that the conduct complained of have occurred after assuming or be connected with the judicial office (GCR 1963, 932.4[d]).

2. JUDGES — IMPARTIALITY — ASSIGNMENT OF ATTORNEYS — MISCONDUCT.

Assignment by a judge of indigent criminal defense cases to attorneys with whom the judge has a financial relationship is patently improper, amounting to judicial misconduct (GCR 1963, 932.4[d]; Code of Judicial Conduct, Canons 2, 3C, 5C[1]).

3. JUDGES — LIQUOR CONTROL ACT — LIQUOR LICENSES — MISCONDUCT.

Maintenance by a judge of a direct or indirect interest in a business holding a Michigan liquor license in contravention of the Liquor Control Act is misconduct in office (MCL 436.18; MSA 18.989; GCR 1963, 932.4).

4. JUDGES — IMPARTIALITY — GIFTS — MISCONDUCT.

Acceptance by a judge and failure to report free legal services received of an attorney subsequently appointed by the judge to represent indigent criminal defendants is judicial misconduct (GCR 1963, 932.4; Code of Judicial Conduct, Canons 5C[4], 6C).

5. JUDGES — MISREPRESENTATION — MISCONDUCT.

Misrepresentation by a judge to a concealed weapon licensing board of the employment classification of a person seeking a concealed weapon permit for the purpose of influencing the board to grant the permit is judicial misconduct (GCR 1963, 932.4; Code of Judicial Conduct, Canon 2; Code of Professional Responsibility and Canons, DR 1-102[A][4]).

6. JUDGES — POLITICAL CONTRIBUTIONS — MISCONDUCT.

Retention of political campaign contributions by a judge for the purpose of establishing an officeholder expense fund is judicial misconduct (GCR 1963, 932.4; Code of Judicial Conduct, Canons 7B[2], subds [d] and [e], 7C[2]).

7. JUDGES — ELECTION LAWS — SUPERINTENDING CONTROL — CAMPAIGN CONTRIBUTIONS.

The provision of the campaign financing act which permits an elected public official to establish an officeholder expense fund does not supersede the proscription of the Code of Judicial Conduct adopted by the Supreme Court in the exercise of its rulemaking function against the maintenance of an expense account by a judge consisting of campaign contributions; under the code, excess contributions must be either returned to the

contributors or donated to the Client Security Fund of the State Bar of Michigan (MCL 169.249; MSA 4.1703[49]; Code of Judicial Conduct, Canons 7B[2], subds [d] and [e], 7C[2]).

*Joseph F. Regnier,* Executive Director and General Counsel, and *Thomas L. Prowse* and *Kenneth B. Morgan,* Staff Attorneys, for the Judicial Tenure Commission.

*Thomas A. Howard* for the respondent.

WILLIAMS, C.J. The Michigan Judicial Tenure Commission[1] filed and served Formal Complaint No. 24 on the Honorable Edward W. Lawrence, judge of the 43rd District Court of the City of Madison Heights, on February 5, 1981. A supplemental complaint was filed on May 5, 1981. The complaint and supplemental complaint allege several areas of judicial misconduct as follows:[2]

(1) improper use of a judicial office by Judge Lawrence in assigning indigent criminal cases to, and allowing appearances by, attorneys with whom he had financial ties;

(2) maintenance of an interest in a business which held a Michigan liquor license;

(3) acceptance of free legal service in personal matters from, and assignment of indigent criminal defense cases to, an attorney;

(4) improper use of a judicial office by misrepresentation to influence securing a license by a personal acquaintance; and

---

[1] The commission was established by Const 1963, art 6, § 30.

[2] Respondent was also charged with violating Canon 5C of the Code of Judicial Conduct, but the master found the allegation to be unsupported and, as noted during oral arguments, the matter is not before us.

(5) improper reporting and retention of campaign funds.

Respondent filed an answer to Complaint No. 24 on March 24, 1981, and an answer to the supplemental complaint on August 14, 1981. He maintains that he has not violated any disciplinary rule or canon nor has he committed misconduct in office or engaged in conduct clearly prejudicial to the administration of justice.

The Honorable George E. Bowles was appointed master on April 6, 1981, and hearings were started on August 27, 1981. The report of the master was filed and served on May 18, 1982. Objections were filed by the respondent, and hearings were held before the commission. On September 16, 1982, the commission's decision and recommendation along with the dissent thereto were served on the parties. On September 29, 1982, the certification of the record and decision of the commission were filed with this Court. Respondent filed his petition to reject the commission's decision and recommendation on December 6, 1982. Oral arguments were heard on April 7, 1983. We then proceeded to conduct a *de novo* review of the record of the proceedings. GCR 1963, 932.25.[3] *In re Somers,* 384 Mich 320, 323; 182 NW2d 341 (1971); *In the Matter of Hague,* 412 Mich 532, 539; 315 NW2d 524 (1982), *reh den* 413 Mich 1106 (1982).

## I. ASSIGNMENT AS COUNSEL FOR INDIGENTS BY, AND APPEARANCES BEFORE, JUDGE LAWRENCE OF ATTORNEYS WITH WHOM HE HAD FINANCIAL TIES

We find that the master and the commission

---

[3] GCR 1963, 932.25 provides:

"The Supreme Court shall review the record of the proceedings on the law and facts and shall file a written opinion and judgment directing censure, removal, retirement, suspension, or other disciplinary action as it finds just and proper, or reject or modify, in whole or in part, the recommendations of the commission."

correctly concluded that Judge Lawrence improperly allowed appearances by, and assigned indigent criminal cases to, attorneys with whom he was formerly associated and with whom he had and still has financial ties and that this constituted judicial misconduct.

"In *In the Matter of Del Rio,* 400 Mich 665; 256 NW2d 727 (1977), we quoted from *In re Greenberg,* 442 Pa 411, 416; 280 A2d 370 (1971), and Tamm, *Are Courts Going the Way of the Dinosaur?,* 57 ABA J 228 (March, 1971):

" 'For generations before and since it has been taught that a judge must possess the confidence of the community; that he must not only be independent and honest, but, equally important, believed by all men to be independent and honest. A cloud of witnesses testify that "justice must not only be done, it must be seen to be done." Without the appearance as well as the fact of justice, respect for the law vanishes in a democracy.' "
*In re Bennett,* 403 Mich 178, 198; 267 NW2d 914 (1978).

On January 1, 1971, respondent assumed his duties as district court judge. He had previously been a municipal judge and practiced law with Russell A. Volz, Richard D. Mintz, and Patrick M. McDonough, under the firm name of Lawrence, Volz & Mintz, P.C. Since respondent owned 99% of the shares of the professional corporation, a financial arrangement was made in which the other attorneys agreed to pay respondent $317,000 over ten years for his interest in the firm and its assets. On January 3, 1972, another series of documents was drafted and signed, making the professional corporation liable for the debt. In 1976, there was a major restructuring of the debt, and the indebtedness of Mintz and McDonough was forgiven, while Volz continued to owe respondent a substan-

tial sum. During this same period of time, these attorneys also leased office space on John R Road and East Twelve Mile Road in Madison Heights, the former owned by Lawrence Associates, Inc., and the latter owned by Judge Lawrence and his wife.

In sum, respondent had substantial financial ties to the attorneys in the firm of Volz, Mintz & McDonough, P.C. At the same time, these attorneys made a substantial number of appearances before respondent. They appeared five times before Judge Lawrence during 1971 and 1972 and 19 times in 1972 and 1973, 14 of which were appointments to represent indigents. During the period of 1971 to 1980, members of the firm appeared before respondent in over 270 cases, 202 of which were appointments by the court to represent indigent criminal defendants at an expenditure of $31,000 in public funds.

The totality of the circumstances must be evaluated. It is not necessary for a particular canon or disciplinary rule to be violated before disciplinary action is warranted. GCR 1963, 932.4(d).[4] It is clear that Judge Lawrence had substantial economic ties to his former associates and that he appointed them to represent indigent criminal defendants in numerous cases before him from which they

[4] GCR 1963, 932.4(d) provides:

"(d) Conduct in violation of the code of judicial conduct or code of professional responsibility and canons, whether the conduct complained of occurred before or after the respondent became a judge or was or was not connected with his judicial office, may constitute misconduct in office or conduct that is clearly prejudicial to the administration of justice or other cause delineated in Const 1963, art 6, § 30. The question in every case is whether the conduct complained of constitutes misconduct in office or conduct that is clearly prejudicial to the administration of justice or there is other cause delineated in Const 1963, art 6, § 30, not whether a particular canon or disciplinary rule has been violated. All the circumstances are to be considered in deciding whether action by the commission is warranted.

gained substantial sums of money. This action is clearly prejudicial to the administration of justice because it definitely gives the appearance of favoritism and economic self-interest.[5]

Under the prior Canons of Judicial Ethics, respondent was in violation of Canons 4, 26, and 29. Canon 4 generally states that a judge's official conduct should be free from impropriety and the appearance of impropriety, while Canon 26 specifically states that "[h]e should, so far as reasonably possible, refrain from all relations which would normally tend to arouse the suspicion that such relations warp or bias his judgment, or prevent his impartial attitude of mind in the administration of his judicial duties". Canon 29 deals with self-interest and states that "[a] judge should abstain from performing or taking part in any judicial act in which his personal interests are involved". Canons 2, 3C, and 5C(1)[6] of the present Code of Judicial

[5] Respondent objects to the findings of the master and the commission that there was misconduct with regard to these appearances and appointments. He objects to the "retroactive application of ethical principles or rules" in that DCR 405.1(7) only applied to partners. DCR 405.1(7) stated:

"The judge shall be deemed disqualified to hear the action when the judge * * * (7) was a partner of a party or attorney within 2 years next preceding the hearing of the cause or any interlocutory matter therein".

Respondent argues it was only after the amendment in 1978 that there was any ground for disqualification. GCR 912.2(4) now states:

"A judge is disqualified when he cannot impartially hear a case, including a proceeding where the judge * * * (4) was a partner of a party, attorney for a party, *or a member of a law firm* representing a party within the preceding 2 years". (Emphasis added.)

As noted above, we do not base our opinion relative to this section of the complaint on the narrow two-year canon, but upon the patent impropriety of giving indigent-defendant assignments to former associates with whom the judge has a financial relationship. We, however, agree with the analysis presented by the commission on this issue.

[6] Canon 2 of the Code of Judicial Conduct, which was adopted in 1974, provides, in pertinent part:

"A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and

Conduct have also been violated. The extensive financial involvement with the named attorneys and the fact that there were 202 appointments to represent indigent criminal defendants definitely raise an appearance of impropriety and violation of the above canons.[7]

## II. Having an Interest in a Business Which Held a Michigan Liquor License in Direct Contravention of Statute

Upon *de novo* review of this matter, we find that the respondent held, directly or indirectly, an interest in a liquor license in direct contravention

appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

"B. A judge should respect and observe the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

"C. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not use the prestige of his office to advance the business interests of himself or others."

Canon 3C provides:

"A judge should raise the issue of his disqualification whenever he has cause to believe that he may be disqualified under GCR 1963, 405."

Canon 5C(1) provides:

"(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality or his judicial office, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves."

[7] Judge Lawrence claims that he was not aware of the impropriety of his actions. He was, however, ruled disqualified by Judge Clarkson in *People v Brown* (46th District Court Criminal Docket No. 00031, April 28, 1971), the first case in which one of respondent's associates appeared before him. Judge Clarkson ruled that respondent was disqualified from hearing any cases brought by his former associates within two years of that disassociation. Judge Lawrence did not challenge this decision.

of MCL 436.18; MSA 18.989. Respondent has thus violated GCR 1963, 932.4.[8]

MCL 436.18; MSA 18.989[9] provided as follows:

"No person who holds or whose spouse holds, either

[8] GCR 1963, 932.4 sets forth the standards of judicial conduct. It provides:

".4 Standards of Judicial Conduct.

"(a) A judge shall be personally responsible for his own behavior and for the proper conduct and administration of the court or tribunal in which he presides.

"(b) A judge shall be deemed guilty of misconduct in office if:

"(i) He is hereafter convicted in the United States of conduct which is punishable as a felony under the laws of Michigan or Federal law.

"(ii) He persistently fails to perform his judicial duties.

"(iii) He is habitually intemperate within the meaning of Constitution of 1963, article 6, section 30.

"(iv) His conduct is clearly prejudicial to the administration of justice.

"(v) He is persistently incompetent or neglectful in the performance of his judicial duties.

"(c) A respondent shall be removable from office for physical or mental disability which prevents the performance of his judicial duties for a substantial period of time and if it appears likely that he will not be able to resume within a reasonable period the normal performance of his duties as a judge.

"(d) Conduct in violation of the code of judicial conduct or code of professional responsibility and canons, whether the conduct complained of occurred before or after the respondent became a judge or was or was not connected with his judicial office, may constitute misconduct in office or conduct that is clearly prejudicial to the administration of justice or other cause delineated in Const 1963, art 6, § 30. The question in every case is whether the conduct complained of constitutes misconduct in office or conduct that is clearly prejudicial to the administration of justice or there is other cause delineated in Const 1963, art 6, § 30, not whether a particular canon or disciplinary rule has been violated. All the circumstances are to be considered in deciding whether action by the commission is warranted."

[9] MCL 436.18; MSA 18.989 was amended by 1978 PA 85, § 1, and now provides as follows:

"(1) A person who holds or whose spouse holds, either by appointment or election, a public office which involves the duty to enforce any of the penal laws of the United States, or the penal laws of this state, or a penal ordinance or resolution of any municipal subdivision of the state, except civil defense volunteer policemen, mayors or council members of cities, or village presidents, or mayors of home rule cities whose law enforcement authority under the city charter is restricted to emergency situations, shall not be issued a license, or have an interest, directly or indirectly, in a license."

by appointment or election, any public office which involves the duty to enforce any of the penal laws of the United States of America, or the penal laws of the state, or any penal ordinance or resolution of any municipal subdivision of the state, except civil defense volunteer policemen, shall be issued any license, nor shall such a person have any interest, directly or indirectly, in any such license."

Respondent violated this statute in that he held an interest "directly or indirectly" in a liquor license. This allegation is supported by the evidence outlined as follows. First, respondent was a shareholder and director of Groveland Valley Development Corporation which had as its primary objective the development of real estate, including a golf course. A separate corporation was organized, Groveland Valley Country Club, to facilitate the development of the golf course and country club. However, for all intents and purposes, Groveland Valley Development Corporation maintained all control, and the entities were one and the same.

Second, when the corporations were contemplating the acquisition of a liquor license, they realized the difficulty of a public official having an interest in the liquor license. Thus, before the Liquor Control Commission approved the transfer of a resort-type liquor license to Groveland Valley Country Club, respondent purported to sell his interest to his mother in 1973.[10] In actuality, however, respondent did not completely alienate his interest, but instead maintained an active interest in the corporation as illustrated by a letter circu-

___

[10] There is some dispute as to whether the check issued by Virginia Lawrence, respondent's mother, was ever negotiated. We need not decide this factual issue, however, since we find that respondent did not completely alienate his interest regardless whether the sale to his mother was actually transacted.

lated on July 9, 1975, stating that respondent intended to exercise his pre-emptive rights, as well as by his frequent attendance at board meetings.

Third, upon dissolution of Groveland Valley Development Corporation, the assets were held successively by two different partnerships, with respondent as one of the partners. Respondent was a partner involved in the subsequent sale of the real estate and liquor license and was listed as having a share in the profits and financial investments of the business. His name appeared on the assignment of the liquor license to the purchasers. Thus, the evidence clearly supports a violation by respondent of MCL 436.18(1); MSA 18.989(1) which precludes a public official from maintaining a direct or indirect interest in a liquor license. This certainly is misconduct in office.

### III. RECEIPT OF FREE LEGAL SERVICES FROM MR. WALTER SCHULLER, ESQ., AND APPOINTMENT OF THAT ATTORNEY TO REPRESENT INDIGENTS

It was alleged that Schuller represented the respondent in three personal matters, that Schuller charged no fee, and that Schuller was appointed to represent indigent criminal defendants for which he received $7,675 in public funds. Upon *de novo* review, the record clearly supports all three allegations.

Respondent maintains that, viewing the situation within the totality of circumstances, there was nothing wrong with having a long-time friend represent him in allegedly minor personal legal matters. We disagree. We find the acceptance of free legal representation and the failure to report such representation coupled with the subsequent assignment of Mr. Schuller to represent indigent defendants to be in violation of Canon 32 of the

former Canons of Judicial Ethics, and Canons 5C(4) and 6C of the Code of Judicial Conduct.[11] The assignment of indigent criminal defendant representation under these circumstances creates the impression of an improper quid pro quo. See *In the Matter of Troy,* 364 Mass 15, 73; 300 NE2d 159; 306 NE2d 203 (1973).[12]

---

[11] Canon 32 of the former Canons of Judicial Ethics provides:

"A judge should not accept any presents or favors from litigants, or from lawyers practicing before him or from others whose interests are likely to be submitted to him for judgment."

Canon 5C(4)(c) provides:

"(4) Neither a judge nor a member of his family residing in his household should accept a gift, bequest, favor, or loan from anyone except as follows:

\* \* \*

"(c) a judge or a member of his family residing in his household may accept any other gift, bequest, favor, or loan only if the donor is not a party or other person whose interests have come or are likely to come before him, and, if its value exceeds $100, the judge reports it in the same manner as he reports compensation in Canon 6C."

Canon 6C provides, in pertinent part:

"A judge should report the date, place, and nature of any services for which he received compensation and the amount of remuneration received and complete detailed information of all contributions of money or of a tangible thing of value by any person, party, committee, organization, firm, group, or entity to any person, party, committee, organization, firm, group, or entity, directly or indirectly, to or for the judge's benefit for any purpose whatever, including, but not limited to, a contribution for a judicial campaign or otherwise and of all disbursements or use of contributions, all on forms to be prescribed by the state court administrator."

[12] In *In the Matter of Troy,* the Court stated:

"He procured substantial legal services from Mr. Manzi and Mr. Carvin. He paid these lawyers nothing for their services. Further, he gave them numerous assignments as court-appointed counsel for indigent defendants for which the two lawyers were compensated at public expense. During the time when Mr. Manzi and Mr. Carvin were serving as his personal attorneys, he presided over cases in which they appeared as counsel for private litigants, and he made no disclosure of the relationship between judge and counsel. On one occasion, without disclosing his relationship to counsel, he presided over a tort case and made a substantial finding in favor of a plaintiff represented by Mr. Carvin."

## IV. IMPROPER USE OF JUDICIAL OFFICE TO
## INFLUENCE A LICENSING AGENCY FOR THE BENEFIT
## OF AN ACQUAINTANCE

It was alleged that two letters written by respondent to the Oakland County Concealed Weapon Licensing Board in support of an applicant for a gun permit contained material misrepresentations that were influential in the decision to issue a gun permit. Upon *de novo* review of the record, we find the allegation to be supported by the evidence.

The letters written by respondent clearly stated that Mr. Archer, the applicant for a gun permit, was a probation officer and was required to go into the inner city of Detroit at all hours during the course of his probation duties. Such information was not true and was clearly a misrepresentation. Mr. Archer was merely a volunteer probation officer who was asked by respondent to help probationers seek employment. Furthermore, he was not seeking a gun permit to assist him in his probational duties at all, but instead for business purposes. The chairman of the licensing board testified he was influenced by the letters submitted by respondent in issuing Mr. Archer an unrestricted gun permit. At a special hearing in 1980 after the general permit was issued, Mr. Archer admitted that he never went into Detroit, and the permit was then changed to a restricted permit in relation to his business activities. This action supports the conclusion that the misrepresentations in respondent's letters influenced the board in its initial decision.

We find the allegation to be supported by the evidence and that such conduct is clearly in viola-

tion of DR 1-102(A)(4)[13] and Canon 2 of the Code of Judicial Conduct and, thus, constitutes misconduct.

### V. Improper Retention of Campaign Funds

Respondent was charged with judicial misconduct for the improper retention of campaign funds in his re-election campaign in 1978. The Committee to Re-Elect Edward W. Lawrence received contributions in excess of $13,800, of which $6,200 was improperly diverted to an officeholder expense fund. Respondent made donations from his officeholder expense fund, including contributions to candidates for non-judicial office, charities, individual retirement parties, and luncheons for public officials.

Canon 7C(2) of the Code of Judicial Conduct clearly states, in pertinent part:

"(2) No judge or other person, party, committee, organization, firm, group or entity may accept any contribution of money or of a tangible thing of value, directly or indirectly, to or for a judge's benefit for any purpose whatever, including, but not limited to, contribution for a campaign deficit, *expenses associated with judicial office*, testimonial, honorarium (other than for services, subject to Canon 6) or otherwise." (Emphasis added.)

Respondent acknowledges. this clear prohibition in the Code of Judicial Conduct, but emphasizes that this provision directly conflicts with MCL

---

[13] DR 1-102(A)(4) provides as follows:

"(A) A lawyer shall not:

\* \* \*

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

169.249; MSA 4.1703(49), which states in pertinent part:

"(1) An elected public official may establish an office-holder expense fund. *The fund may be used for expenses incidental to the person's office.* The fund may not be used to make contributions and expenditures to further the nomination or election of that public official." (Emphasis added.)

This statute was enacted pursuant to Const 1963, art 2, § 4 which grants the Legislature authority to regulate elections. We do not dispute the fact that the Legislature has the authority to "maintain the integrity of Michigan's election process", *Socialist Workers Party v Secretary of State,* 412 Mich 571, 594; 317 NW2d 1 (1982), but we conclude that the more specific Code of Judicial Conduct authorized by Const 1963, art 6, § 4 governs respondent's actions. Canon 7C(2) clearly prohibits the maintenance of an expense account consisting of contribution funds.

Respondent defends his actions with respect to funds contributed to his campaign principally on the basis that the Code of Judicial Conduct was superseded by MCL 169.249; MSA 4.1703(49), establishing officeholder expense funds. This is a complete misapprehension of the situation, and we do not accept respondent's position as having any validity.

The Code of Judicial Conduct was established by this Court pursuant to the authority and responsibility imposed on it by Const 1963, art 6, § 4, providing that "[t]he Supreme Court shall have general superintending control over all courts". The general and comprehensive nature of this authority was examined by Chief Justice DETHMERS in *In re Huff,* 352 Mich 402, 417-418; 91

NW2d 613 (1958). This Court, as recently as 1981, in *In the Matter of Probert,* 411 Mich 210, 229-230; 308 NW2d 773 (1981), confirmed the continuing validity of *Huff,* as follows:

"As explained in *In re Huff,* 352 Mich 402, 418; 91 NW2d 613 (1958):
" 'The superintending control conferred by Constitution on this Court is a power separate, independent and distinct from its other original jurisdiction and appellate powers, its purpose being "to keep the courts themselves 'within bounds' and to insure the harmonious working of our judicial system." * * * Such power having been conferred by Constitution upon this Court, it also received all the power necessary to make that control and its implementing orders and writs effective.' (Citations omitted.)"

Specifically, this Court has held that the supervisory power of the Court cannot be restricted or removed by legislative action. *Brown v Kalamazoo Circuit Judge,* 75 Mich 274, 279; 42 NW 827 (1889). The matter has most recently been reviewed in *In re 1976 PA 267,* 400 Mich 660, 662-663; 255 NW2d 635 (1977). This was a letter to the Governor and Legislature from this Court advising that the so-called "Sunshine Law", 1976 PA 267, could not constitutionally be applicable to the courts even "while exercising rulemaking authority". The import of this letter for this matter is that the legislation may not intrude upon the constitutional exercise of judicial authority in the exercise of its rulemaking function, which is what this Court was doing in this case. As a consequence, this Court will not presume that the general election law and particularly the officeholder expense fund provision was intended to intrude upon spe-

cific action of this Court in adopting a Code of Judicial Conduct to assure judicial integrity well within its constitutional authority.

Respondent maintains that he did not know whether the Judicial Code or the legislation controlled and that, therefore, he should not be charged with misconduct. Respondent, however, was informed of the conflict by a State Court Administrative Office memorandum transmitted by an election official "that a judge may not establish such [an officeholder's] fund".

The Code of Judicial Conduct clearly states what a judicial candidate is to do with campaign funds. Canon 7B(2), subds (d) and (e) provides:

"(d) If a candidate is not opposed for such judicial office, he or his committee shall return to the contributors funds raised in excess of the actual costs incurred or contribute such funds to the Client Security Fund of the State Bar of Michigan, not later than January 1 following the election.

"(e) Any candidate or his committee having funds remaining after payment of all campaign expenses shall either return such funds to the contributors thereof or donate said funds to the Client Security Fund of the State Bar of Michigan, not later than January 1 following the election."

Regardless of whether respondent was opposed or not (his opponent withdrew), the respondent should have either returned the funds not properly expended on his election to the contributors or donated the funds to the Client Security Fund. Respondent did donate $532 to the client fund, but $6,200 went into an officeholder expense fund. This was clearly in violation of the Code of Judicial Conduct.

CONCLUSION

Upon *de novo* review of the record in this case, we find that the allegations of misconduct found by the commission are supported by the evidence. The conduct complained of, as discussed above, constitutes misconduct in office and conduct clearly prejudicial to the administration of justice.

Const 1963, art 6, § 30(2) provides:

"(2) On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire or remove a judge for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice. The supreme court shall make rules implementing this section and providing for confidentiality and privilege of proceedings."

GCR 1963, 932.25 implements this provision and provides:

"The Supreme Court shall review the record of the proceedings on the law and facts and shall file a written opinion and judgment directing censure, removal, retirement, suspension, or other disciplinary action as it finds just and proper, or reject or modify, in whole or in part, the recommendations of the commission."

We, therefore, pursuant to art 6, § 30(2) and GCR 1963, 932.25, adopt the recommendations of the commission (a) that respondent be publicly censured; (b) that respondent be suspended from all judicial and administrative responsibilities, without pay, for a period of nine months; (c) that respondent be ordered to pay costs; and (d) that respondent be ordered, as a condition for his rein-

statement, to return to the contributors or remit to the State Bar Client Security Fund the amount of $5,667.97 ($6,200 that was diverted to the office-holder expense fund minus $532 already paid to the Client Security Fund).[14]

KAVANAGH, LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with WILLIAMS, C.J.

[14] Respondent states that he has sought to regulate his extrajudicial conduct to minimize the risk of conflict with the Code of Judicial Ethics and the concerns of the commission. As stated in *In the Matter of Laster,* 404 Mich 449, 461; 274 NW2d 742 (1979),

"There is no doubt that 'good faith' should be considered as a mitigating factor to acts of misconduct but not as an affirmative defense to charges of misconduct."